**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  18-CR-391 (KBJ)** |
| | : | |
| **v.** | : | |
| | : | **SENTENCING:  March 10, 2020** |
| **CHRISTOPHER MICHAEL DOWNS,** | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.  For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 70 months (5.833 years) to be followed by 60 months (5 years) of supervised release, with the conditions recommended by United States Office of Probation.  Additionally, the defendant is required by statute to register as a sex offender for a minimum period of 25 years.  In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

I.   **BACKGROUND**

A.   **Statement of Offense**

Leading up to Friday July 6, 2018, a detective with the Metropolitan Police Department ("UC") was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force operating out of a local office in Washington, D.C.   In that capacity, the UC posted numerous online bulletin messages on a specific social media forum known to the UC as an anonymous website where users

discuss and trade child pornography. This site is a free online chat website that allows users to socialize with others without the need to register on the website.

An individual on this website sent the UC a message on KIK Messenger. [1]   Over KIK messenger, the individual invited the UC into a group chat on KIK messenger ("KIK group") in which individuals were trading child pornography called "Pedos Only."[2]   The group consisted of at lest 8 individuals to include the UC and users with the KIK screen names, "capjack101," "hardrocker91," "jayrock985," "morellosweet," "john_ell3," "aleeseH," and "dnick1982."

In this KIK group, a user with the username "dnick1982," later identified as Daniel Nickelson of Sierra Vista, Arizona ("Nickelson"), encouraged members to private message him on KIK so that he could see whether they had child pornography to offer.  If members who private messaged Nickelson met the criteria of having either child pornography or sexual access to a child, Nickelson would invite them to a private chatroom on KIK.  For example, on or about July 18, 2018, Nickelson posted in the Pedos Only KIK group, "If anyone wants to be added to a private group pm me and show me what you can tribute."  He also posted, "Any one wanna trade vids."

Between July 12, 2018 and July 18, 2018, Nickelson and the UC engaged in a private chat via KIK.  In this chat, the UC represented to Nickelson that he was the father of a daughter with whom he has shared custody. Nickelson inquired whether the UC had "any vids" of the child. The two continued to discuss whether the UC was sexually active with his young daughter, and Nickelson informed the UC that he had "a few" videos depicting child pornography.  Nickelson then sent the UC a video depicting a female of an unknown age masturbating.  Nickelson instructed the

---

[1] KIK is a freeware instant messaging mobile application where one can transmit and receive messages, phots videos, sketches, mobile webpages, and other content.
[2] KIK groups permit no more than fifty members to participate at any given time.

UC to "download Dropbox"[3] and save any images the UC had of his own purported child to it. Nickelson then informed the UC, "Here is something for you when you download drop box," and sent a link to a Dropbox folder. This link contained folders within which were images and videos depicting child pornography.

On July 13, 2018, Nickelson invited the UC to a second private KIK group chat (herein "KIK Group"). This group consisted of at least 10 individuals to include Nickelson and the UC, as well as KIK users with screen names "drbob29," "lddng," "allnight224," "fire463," "RobotRon517," "BigBossMan8383," "Summersweet87," "xxxxXDxxxxz," and "swordeater88."

UC joined the KIK Group, and observed members trading images and videos of child pornography.  For example, on July 16, 2018, Nickelson posted a video to the KIK Group that displayed a video of what appears to be a prepubescent female child between the ages of 8 and 10 inserting what appears to be a yellow drinking straw into her vagina for the purpose of masturbation, then sticking the straw in her mouth and drinking the fluid. The group also discussed the members' preferences for the age of children with whom each member would like to engage in sex acts. Members expressed an interest in engaging in sexual acts with children ranging from 12 to 15 years of age, and discussed the standards for admittance into the KIK Group.  For example, the following posts were exchanged in the chat between all group members:

Nickelson: I wanna fuck nice 15 yr old

Lddng: Really...I love most 12

Lddng: Robot hbu

RobotRon517: 12-15 is my fav

---

[3] Dropbox is a file hosting service that allows users to store files and data in the cloud. Users can then share those files via links to the content stored in the Dropbox account.

Lddng: Wow.nice…have you any real experience

Lddng: We should find more meb here have vid…what do u think robot..

RobotRon517: Disagree

Lddng: Why…

RobotRon517: More members more risk

Lddng: That's true…but its very difficult find pedo vid..

RobotRon517: Then find another group. To get in here, they must send 3 original/quality non net-find pics for approval/admitence

RobotRon517: Not trying to be a jerk, but so far this group has been very productive and content shared well

Within the KIK Group, Nickelson used the screen name "teddybear," which is the user name displayed to other members of the KIK Group.  Nickelson was promoted to an "administrator" position by RobotRon517 on July 16, 2018. Administrators have the power to invite users, delete users, screen content, etc.  When Nickelson was made an administrator of the private group by "RobotRon517," "RobotRon517" instructed Nickelson that, "In order to be added to the group they must. Send a few pics/vids so we know they are legit."

On July 17, 2018, a message was displayed within the chat that "teddybear" (Nickelson) "was promoted to the "owner" of the chat group. As owner and administrator of the group, Nickelson continuously instructed members to post more videos and images of child pornography. On July 18, 2018, Nickelson uploaded to the group a link to the Dropbox files that he had sent to the UC.  He also uploaded images and videos of child pornography directly to the group. For example, Nickelson uploaded a picture of what appears to be a prepubescent female performing oral sex on what appears

to be a prepubescent male. Additionally, Nickelson uploaded a video into the group of what appears to be an adult male penetrating the vagina of a prepubescent female child with his penis.

On or about July 19, 2018, Nickelson invited user "swordeater88," later identified as Christopher Michael Downs (DOWNS), to the KIK Group.  The same day, soon after being invited into the KIK Group, DOWNS posted at least 3 images depicting child pornography. Depicted in one file is an adult female inserting her tongue in what appears to be a prepubescent female child's vagina. Another image posted by DOWNS depicted a screenshot of a fully naked prepubescent female child between the ages of 2 and 5 that appears to be posing for the camera. A third image sent to the group by DOWNS depicts an adult male penetrating the vagina of what appears to be prepubescent female child with his penis.

Later on the same day, July 19, 2018, Nickelson posed a question to the KIK Group:

Nickelson: Anyone have any kids?

Savannahbibitch: I have a sis

Nickelson: How old is she?

Savannahbibitch: 11

DOWNS: Awesome

Nickelson: You have fun with her

Nickelson: ?

Funtimes43219: Mmmm

Nickelson: Will do you have any more?

DOWNS: I once fooled around with my 13 year old cousin

Nickelson: .. ..are you gonna post anything

Savannahbibitch: I have gotten head from her once

DOWNS: Sweet

Nickelson: How old are you?

DOWNS: I'm 30

Nickelson: What about you Austin?

Nickelson: IF I ADDED YOU AND YOU DON'T START POSTING PICS-----I AM GOING TO KICK YOU OUT

Willnell88: Iv posted 2 already

DOWNS: [DOWNS posted two images to the group, one of which appears to be an adult hand manipulating the vagina of what appears to be an infant prepubescent female child; the second image depicted an apparently prepubescent female child lying on a bed with her legs spread, displaying her vagina, with an adult male hand holding her leg]

On July 19, 2018 DOWNS posted to the KIK Group an image depicting a naked prepubescent female child laying on her back with her legs spread with what appears to be an adult's bare foot lying beside her. Nickelson then asked the group, "Any one have vids of young fucking young?"  In response, DOWNS posted an image depicting a prepubescent female child lying on her back with her legs spread exposing her vagina, with two hands grabbing her right leg positioned to pull her towards the person positioned off of the screen.  The following exchange ensued:

Nickelson: GottA go to work now

Funtimes43219: [Posted a file depicting a teenage aged female]

Nickelson: Be back tonight

Willnell88: [Posted a file of what appears to be a female forcing a prepubescent male child to insert his penis in her vagina by grabbing the buttocks of the male child to push the child towards the female]

Nickelson: Nice

DOWNS: So hot

Savannahbibitch: I'm 23

Savannahbibitch: I'm so horny

DOWNS: Join the club

Funtimes43219: Me too

DOWNS later posted two more files of naked minors posing for the camera. On or about July 20, 2018, Nickelson asked DOWNS to post additional child pornography.

Nickelson: Asuna[4] you still here?

DOWNS: Yea just getting ready for bed

Nickelson: [Posted a file of a naked prepubescent female child who appears to be between the ages of 3 and 5.]

Nickelson: Can you show these people some of your good stuff real quick?

Katecouple2018: I hope it's good

[Nickelson then promoted katecouple2018 to admin]

DOWNS: [Posted a 10-second video of a prepubescent female lying in a bathtub and with an adult male inserting his penis into her mouth.]

DOWNS: [Posted 3 more images depicting child pornography to the KIK Group, one of which depicted two naked prepubescent female children under the age of 10 laying on the

---

[4] DOWNS used the screen name "Asuna" on his swordeater88 profile.

bed with a naked adult male. The adult male is inserting his penis into one child's mouth while the other female child is kissing the adult male on his lips.]

Katecouple2018: I love going down on my daughter I wish I could have her suck on a few cocks

DOWNS: [Posted 22 more images depicting child pornography. Some of the images were previously posted by DOWNS and described earlier. The new images posted included, for example, an image depicting a prepubescent male performing oral sex on an adult male's penis; an image depicting an adult female performing oral sex on a prepubescent female vagina's while she was lying on a couch; and an image of a prepubescent female performing oral sex on an adult male's penis.]

In order to confirm DOWNS's identity FBI agents, initiated investigation into information gathered about DOWNS during the chats with the UC and from his usage of KIK messenger and utilized a series of administrative subpoenas.

Ultimately, the FBI was available open source and law enforcement sensitive databases were used to fully identify the suspected user of KIK user "swordeater88" as Christopher Michael Downs, with a date of birth of x/XX/XXXX; a social security number of 592-68-XXXX; and FBI number of XXXXXXX..

After arrest, DOWNS confirmed his identity, and during a custodial interview, he confirmed his use of the KIK under the name "swordeater88" and his distribution of child pornography to private groups through the KIK application.

B.      **Procedural Posture**

The Defendant was charged on September 14, 2018 via criminal complaint in the United States District Court of the District of Columbia with one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and one count of Conspiracy to Distribute Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1).  A warrant was issued for his arrest at that time, and the warrant was executed in his home state of Arizona on September 18, 2018.  The Defendant had his initial appearance in the United States District Court for the District of Arizona on that day. He was initially released by a magistrate judge of that court, but the government appealed. A stay was granted pending the resolution, and the Defendant was transferred to this jurisdiction. The defendant made his initial appearance in this jurisdiction on October 19, 2018 and was ultimately consented to detention pending trial. On December 28, 2018, the government filed an information charging the defendant with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) pursuant to a plea agreement reached by the parties.  On January 31, 2019, the defendant pleaded guilty to the sole count in the Information under a written plea agreement and sentencing was set for June 6, 2019.  That sentencing date was later vacated, and sentencing continued, to allow for the defendant to undergo a complete psychological and psychosexual examination authorized under 18 U.S.C. Sections 3352(b) and 4244(b).

II.     **SENTENCING CALCULATION**

A.  **Statutory Penalties**

The offense of Distribution of Child Pornography, in violation 18 U.S.C. § 2252(a)(2), carries a mandatory-minimum prison sentence of 5 years and a maximum sentence of 20 years imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than

five years and up to life pursuant to 18 U.S.C. § 3583.  See Presentence Investigation Report

dated May 7, 2019 (PSR) ¶¶ 4, 93, 103, 104.[5]  Pursuant to 18 U.S.C. § 3013(a)(2)(A), the

defendant must pay a mandatory special assessment fee of $100 for each felony conviction

payable to the Clerk of the United States District Court for the District of Columbia. See PSR ¶

117.  The defendant must also register as a sex offender for a minimum period of 25 years

pursuant to 18 U.S.C. § 2250 and 34 U.S.C. §§ 20911(3), and  20915(a)(2).

### B.  Sentencing Guidelines Range

The applicable Estimated Guidelines Range provided in the plea agreement is 70 to 87

months incarceration.  See PSR ¶ 99.  The base offense level is 22 pursuant to U.S.S.G. §

2G2.2(a)(2).  The government agrees with the PSR that several specific offense characteristics

apply: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense

involved the knowing distribution of child pornography (+2); and the offense involved the use of

a computer or an interactive computer service (+2)); and the offense involved at least 10 but

fewer than 150 images (+2). See id. ¶¶ 35, 35, 38, 39.  The parties did not include in the plea

agreement calculation the specific offense characteristic related to material that portrays sadistic

or masochistic conduct.[6]

---

[5] Please note: all citations refer to the paragraph numbers contained in the Presentence
Investigation Report dated May 7, 2019, as this was the most recent report at the time of the
writing of this memorandum.

[6] Case law outside of the District of Columbia supports a 4-level enhancement under USSG
§2G2.2(b)(4)(A) for materials portraying sadistic or masochistic conduct in cases where the
images depict vaginal or anal penetration of prepubescent minors by a penis. There is no D.C.
case law on this issue. Moreover, as stated above and in the statement of offense, the instant case
involves a single arguable such image, namely one image by DOWNS that shows an "adult male
penetrating the vagina of *what appears to be* prepubescent female child with his penis."
(emphasis added). The parties agreed based on the facts and circumstances of this case
(including defendant's pre-indictment resolution), not to include this enhancement to limit
litigation at sentencing of disputed issues.

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Id. ¶ 45.  The government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. Id. ¶ 46.  With these adjustments, the defendant's total offense level is 27, according to the Estimated Guidelines Range in the plea agreement..

The defendant has a total criminal history score of zero points. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.  With a total offense level of 27 and a criminal history category of I, the defendant's recommended guideline sentencing range is 70 to 87 months, and a supervised release range of 5 years to life, and a fine range of $25,000 to $250,000. This offense also carries a mandatory minimum term of incarceration of 60 months.

## III.    GOVERNMENT'S RECOMMENDATION

### A.    Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.")  After giving

both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  Id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

**B.      Basis for the Government's Recommendation**

Given the particular circumstances of this case, and pursuant to the plea agreement in which the government agreed to cap its allocution at the low end of the guideline range, the government submits that a sentence of 70 months incarceration, to be followed by five (5) years supervised release, and the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted based on the factors outlined in 18 U.S.C. § 3553(a).  The recommended sentence is sufficient, but not greater than necessary to accomplish the purposes of sentencing.  Given the serious nature of the defendant's conduct in this case and his risk to the community, balanced against his lack of criminal history and early acceptance of responsibility, the government believes this is an appropriate sentence.

**1.      Nature and Circumstances of the Offense**

The defendant's distribution of child pornography is a serious, violent offense, and not

just by dint of Congress' designation of it as such and imposition of a five-year mandatory minimum term of incarceration.  As many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." United States v. Miller, 665 F.3d 114, 123 (5th Cir. 2011).

The defendant shared files of pre-pubescent children being sexually abused, engaged in conversations promoting the sexual abuse of children and even claimed to have sexually abused a child (his cousin) himself (though outside of the chatroom he later claims it occurred when he too was a minor). At the moment these children in these files he shared and other similar images and videos were filmed, they were being treated at best as sexualized objects and at worst being horrifically and repeatedly sexually abused. The abuse of child pornography victims does not end, however, when the physical contact or production of images or videos is over. The abuse and harm go on as long as those images and videos are viewed, traded, collected, and used by offenders for sexual gratification. In this age, victims of child pornography must attempt to cope with the knowledge that the worst moments of their young lives are forever memorialized and available to child pornography consumers. Individuals—like the defendant—who receive, seek, view, keep, trade, distribute, and use child pornography for their own sexual gratification are part of the illicit market for child pornography, which continually re-victimizes the children in already-existing images and videos and promotes the victimization of even more children for new images and videos.

### 2. Defendant's History and Characteristics

Defendants in child pornography cases often possess positive characteristics that allow them to remain undetected in society.  Quite often, defendants in these cases appear to be like any other law-abiding citizen, with education, work histories, and supportive families.  The danger they pose to children is often not readily apparent.

The defendant appears to at least partially fit this mold. He has minimal criminal history, was married at the time of arrest in this case, and was employed. However, of concern to the government is that, by the defendant's own admission, his actions regarding child pornography were not a one-time event.  Rather, he himself admitted to unlawful conduct regarding child pornography for a period of approximately seven months prior to his arrest.   Given the nature of the conduct, there is no way to determine with certainty when his criminal behavior began.

The defendant did acknowledge guilt at the time of his arrest and plead guilty at an early stage of the litigation.  These considerations were taken into account in the plea agreement bottom of the Estimated Guidelines Range.

### 3. Punishment, Deterrence, Protection, and Correction

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses.  The defendant's distribution of child pornography is harmful to society at large, as well as the specific child victims, and warrants a

substantial sentence of imprisonment. As a matter of general deterrence, a sentence of incarceration signals that trafficking in child pornography represents a serious crime that cannot be tolerated.  As a matter of specific deterrence, a prison sentence is appropriate and necessary to deter the defendant from committing future child exploitation crimes.  Furthermore, a term of 5 years supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the treatment and support he needs to make further attempts to ensure that he does not commit similar offenses in the future.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration, as he is ineligible for probation because it is expressly precluded by the statute.  According to the PSR, the defendant does not appear to have the ability to pay a fine. See PSR ¶ 96.  In addition, the court should impose a term of supervised release to ensure that the defendant does not re-offend.  The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and monitoring of the defendant's use of the Internet, computers, and any other Internet-capable devices as well as any other special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

### CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 70 months, to be followed by 5 years of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender for a minimum period of 25 years.

Respectfully submitted,

TIMOTHY SHEA
UNITED STATES ATTORNEY


_____/s/_____
Nicholas Miranda
Assistant United States Attorney
D.C. Bar 995769
555 4th Street, N.W., Room 4-233
Washington, D.C. 20530
(202) 252-7011
Nicholas.Miranda@usdoj.gov