IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 18-391 (KBJ) |
| | ) | |
| CHRISTOPHER MICHAEL DOWNS, | ) | |
| Defendant | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Mr. Downs  humbly asks this Court to impose a variance.  Pursuant to

Federal Rule of Criminal Procedure 32 and 18 U.S.C.  Section 3553(a),  Mr.

Downs, through his lawyer, Kira Anne West,  submits this memorandum to aid the

Court at sentencing and hereby notifies the Court that he has received and

reviewed the Presentence Report ("PSR") prepared in this case.   After carefully

reviewing the PSR with Mr. Downs, there are no objections to the PSR,  and only a

couple of minor factual corrections that were provided to the probation officer.

Mr. Downs respectfully requests that this Honorable Court impose a variant

sentence of 60 months, less than a year below the  bottom of the sentencing

guideline range, the minimum mandatory in this case.

## PROCEDURAL HISTORY

1

Mr. Downs comes before this honorable Court after having pled guilty  on January 31, 2019,  to  a one count  information[1] charging him with distribution of child pornography in violation of 18  U.S.C. §2252(a)(2).  On June 4, 2019, this Court ordered a complete psychological and psychosexual examination of Mr. Downs. The examination was done and was provided to the parties and is filed under seal.  Mr. Downs completely cooperated with this Doctor.  Likewise, Mr. Downs acknowledged his wrongful behavior immediately upon being arrested,  truthfully debriefed, and  was  contrite.  He did not try to minimize his conduct. He was among the first if not the first to plead guilty and cooperate in this case.

## GUIDELINE CALCULATION

According to the PSR and Pursuant to the United States Sentencing Guidelines (hereinafter "USSG"),  the following Guideline sections apply:

| | | |
|---|---|---|
| USSG §2G2.2 | Base offense level: | 22 |
| Specific Offense Characteristics: | | |
| USSG §2G2.2(b)(2)  involved prepubescent minors | | +2 |
| USSG §2G2.2(b)(2)(F)  knowingly engaged in distribution | | +2 |
| USSG §2G2.2(b)(6)  use of a computer | | +2 |
| USSG §2G2.2(b)(7)(A)   at least 10 images & less than 150 | | +2 |
| | Adjusted offense level: | 30 |

---

[1] The one count  information was filed December 28, 2018. *See* PSR ¶ 1.

USSG §3E1.1(b)         Acceptance of responsibility:             -3

                       Total Offense level:                      27

Because Mr. Downs is in a criminal history category I, his guideline

sentencing range of 70-87 months.[2]

## **LEGAL STANDARD**

Congress has identified four "purposes" of sentencing: punishment,

deterrence, incapacitation and rehabilitation. 18 U.S.C. §3553(a)(2).  The selection

of an appropriate sentence from within the guidelines range, as well as the decision

to depart from the range in certain circumstances, are decisions left solely to the

sentencing court. *Williams v. United States*, 503 U.S. 193, 195 (1992).   The

sentencing guidelines are merely advisory. *United States v. Booker*, 543 U.S. 220

(2005).   The Supreme Court has made clear that the Sentencing Guidelines have

become only one of the many factors that a sentencing court should consider.   *See*

*Gall v. United States*, 552 U.S. 38, 49 (2007) ("The Guidelines are not the only

consideration … the district judge should consider all of the §3553(a) factors to

determine whether they support the sentence requested by a party"). In reviewing

the factors, the court may not presume the Guidelines range is reasonable. *Id*.

---

[2] The plea agreement estimated it to be the same: criminal history category I with a guideline range of 70-87 months. *See* PSR ¶ C, pps 3-4.

In reviewing the sentence, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the §3553(a) factors justify the variance. *United States v, Gall*, 552 U.S. 38, 49 (2007). (*citing United States v. Booker*, 543 U.S. 220, 246 (2005)).

To achieve the purposes of sentencing,  §3553(a) of Title 18 of the United States Code enumerates certain factors a district court must consider when sentencing a defendant who has been convicted of a federal offense.[3] 18 U.S.C. § 3553(a)(1-7).  Many of these considerations apply here and are discussed as they relate to Mr. Downs.

---

[3]  1.   The nature and circumstances of the offense and the history and characteristics of the defendant;
   2.   The need for the sentence imposed to:
     a)   Reflect the seriousness of the offense;
     b)   Promote respect for the law and provide just punishment for the offense;
     c)   Afford adequate deterrence to criminal conduct;
     d)   Protect the public from further crimes of the defendant; and
     e)   Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   3.   The kinds of sentences available;
   4.   The kinds of sentence and the sentencing range for the applicable category of offense…;
   5.    Any pertinent policy statements issued by the Sentencing Commission;
   6.   The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
   7.    The need to provide restitution to any victims of the offense.

4

At sentencing, a district court must impose a sentence that is "sufficient, but not greater than necessary" in light of the factors identified in §3553(a).   *United States v. Mendoza-Mendoza*,  597 F.3d 212, 216 (4th Cir. 2010), *citing Kimbrough v. United States*, 552 U.S. 85, 111 (2007)(quoting §3553(a)).   A "district court making the initial sentencing decision may not presume that the appropriate sentence in a given case will come from the Guidelines*." Mendoza-Mendoza*, 597 F.3d at 216, *citing Rita v. United States*, 551 U.S. 338, 351 (2007).  The Court can no longer presume that a guideline sentence is the correct sentence; to do so would be taking a large step towards returning to the pre-Booker regime. *United States  v. Pickett*, 475 F.3d 1347 (D.C. Cir. 2007). Under the new advisory guideline scheme, "district courts have a freer hand in determining sentences." *United States. v. Trujillo-Tauruses*, 405 F.3d 814, 819 (10th Cir. 2005). They may sentence in or out of the applicable guideline range.  District judges now have more substantive discretion in sentencing, and retain the power to re-balance the individual sentencing against the goals of sentencing uniformity and predictability.     And a district court need not justify a sentence outside the Guidelines range with a finding of "extraordinary" circumstances." *Gall v. United States*, 552 U.S. 38, 47 (2007) (upholding a sentence of thirty-six months' probation, a 100 percent downward deviation from the Guidelines range of thirty-thirty-seven months imprisonment).

5

## FACTORS CONSIDERED UNDER 18 U.S.C. §3553(a)

### A.  Nature & Circumstances of the Offense & the History and Characteristics of Mr. Downs

Mr. Downs recognizes the seriousness of his crime.  Nevertheless, there are mitigating factors regarding his criminal conduct. Consistent with his conduct in this case, he is a non-violent, first time pornographer. Thus far, there is no identifiable victim in this case. Undersigned counsel recognizes that this crime is categorized statutorily as a violent felony.  However, this offense involved no violence, Mr. Downs is not a violent person as the report of the doctor shows, and there is absolutely no evidence of any threats, coercion or violence in the entire case.

There are two important mitigating factors that the Court should take into consideration here: Mr. Downs' history of physical and sexual abuse and his military service. As stated in the PSR and the report from the Doctor, these issues have had a profound, negative affect on Mr. Downs. *See* PSR  ¶¶'s 51-56, 58, & 89. He has suffered symptoms of combat known as PTSD.

Not to be overlooked is the fact that Mr. Downs has always been a hard worker and employed.  *See* PSR  ¶¶'s 86-88. He intends to find work as soon as he is released.

### B.  Need for the Sentence imposed

    1. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

Mr. Downs is not the type of defendant that a lengthy sentence would serve to correct his behavior. *See United States v. Newhouse*, 919 F. Supp. 2d. 955, 959 (N.D. Iowa 2013)(imposing significant variance in case involving street-level offender based on the conclusion that career offender guideline does not achieve just sentencing in such cases). In imposing just punishment to reflect the seriousness of the offense, it is important to consider sentencing Mr. Downs to the same penalties that were designed for significantly more serious offenders does not constitute just punishment. In addition, a one-size-fits-all scheme that imposes lengthy sentences indiscriminately on offenders, regardless of their culpability, does not promote respect for the law. Furthermore, in imposing "just punishment" for an offense, a sentencing court should not disregard the additional penalties and hardships that will accompany Mr. Downs felony record. Based on his conviction, Mr. Downs will face an overwhelming number of collateral consequences. One that will follow him for years and act as a deterrent is the fact that he must now register as a sex offender.

    Judges in this District have been receptive to ordering sentences that vary from the applicable Guidelines range, including this honorable Court. According to the annual statistics published by the United States Sentencing Commission, in

Fiscal Year 2018, only 28.5% of offenders were sentenced to a sentence within the guidelines range, and sentenced with a  variance in 62.7% of the cases. *See* United States Sentencing Commission, Sourcebook Table 31 found at:  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table31.pdf.

2. To afford adequate deterrence to criminal conduct

a. General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to adequately deter others from criminal conduct

A sentence below what is recommended by the proposed guideline range, that is, a significant variance from the proposed sentencing guideline range, is a reasonable variance to the sentence that must be  "sufficient, but not greater than necessary to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).  Under the facts of this case, such a sentence, will protect the public, provide just punishment, and afford adequate deterrence.  Each case that comes before this Honorable Court is unique and to base Mr. Downs sentence on an advisory, standardized system would render the facts, context and background of this case and Mr. Downs obsolete.

Incarcerating Mr. Downs  to the proposed guideline sentence will not serve the need to deter others from committing crimes any better than a sentence somewhat  below that.  The National Institute of Justice, Department of Justice,

issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf. In a recent opinion from the Eastern District of New York, Judge Fredrick Block concluded that "sufficient attention has not been paid at sentencing . . . to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence." *United States v. Nesbeth,* Case No. 1:15-cr-00018, 2016 WL 3022073, at *1 (E.D.N.Y May 24, 2016)(varying downward from guideline range of 33 to 44 months' imprisonment to one-year of probation for a drug defendant based in part on the number of statutory and regulatory consequences she faced as a convicted felon); *see also* Jeremy Travis, Invisible Punishment: An Instrument of Social Exclusion, in Invisible Punishment: The Collateral Consequences of Mass Imprisonment (Marc Mauer & Meda Chesney-Lind eds., 2002).[4]

---

[4] As several courts have recognized, the collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just

b.   Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public
from further crimes of the defendant

Incarcerating Mr. Downs for a lengthy amount of time  is not necessary to
serve the need to deter him from committing further crimes. A lengthy
incarceration in addition to his time served will not only serve no rehabilitative
purpose for him but would do just the opposite. Fortunately, as the Court can see
from the letters[5] of support, he has just the support he needs when he is released.
Since his incarceration,  Mr. Downs has been a model prisoner and tried to avail
himself of every opportunity to better himself, most specifically through reading.

---

punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand
from the Supreme Court for reconsideration in light of *Gall*, overruling its prior
holding that it was inappropriate for the district court to consider the lasting effects of being
required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir.
2007) (in a case involving a conviction for possession of child pornography after *Gall*,
affirming the district court's finding that the defendant "warranted a lower sentence because he
lost his teaching certificate and his state pension as a result of his conduct," because
"[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect
the need for just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* §
3553(a)(2)(B)); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming
below-guideline sentence based in part on court's findings that defendant suffered substantial
mental and personal stress as a result of his prosecution, because the court's findings "were
directly relevant to the § 3553(a) analysis, which requires sentences to reflect, among other
things, "the history and characteristics of the defendant," the need to "protect the public from
further crimes of the defendant," the need to "provide just punishment for the offense," and the
need to "afford adequate deterrence").

[5] These letters have been emailed to the AUSA and the Probation Officer. They will also be
delivered to the Court under seal.

10

More recently, the National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime."  U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

As a preliminary matter, increasing Mr. Downs  term of imprisonment will not have a positive impact on his risk of recidivism. That is, the empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. *See* National Institute of Corrections, Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe (2016); *see also* Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that 14 such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame"). In sum,

the best available evidence establishes that imprisonment does not reduce recidivism more than noncustodial sanctions. Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

Not only are child pornography offenders at low risk to re-offend in general, but Mr. Downs is unlikely to recidivate given his history and characteristics. The Commission's research demonstrates that employment, education, lack of criminal history, and family ties and responsibilities all predict reduced recidivism, *see* U.S. Sent'g Comm'n, *Measuring Recidivism* at 12-13 (2004).

3. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Mr. Downs does not require traditional medical treatment while in the Bureau of Prisons. He does, however, need and welcomes vocational training.  As discussed in the Doctor's report,  specific medical care tailored to his offense will also be appropriate.

## C. The kinds of sentences available

Although there is a mandatory minimum sentence driven by the statute in this case, a variance is requested.   Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered in this case.  Defendant's financial condition is such that he cannot pay any significant fine.  See U.S.S.G. §

12

5E1.2(a) (fine not recommended if defendant unable to pay).  18 U.S.C. § 3553(c)

" requires that the court provide a 'reasoned basis' for its decision and consider all

'non-frivolous reasons' asserted for an alternative sentence." *United States v.*

*Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (citation omitted).

### D. The need to avoid unwarranted sentencing disparities

Section 3553(1)(6) directs Courts to avoid unwarranted sentencing disparity.

His crime was serious, and Mr. Downs does not mean to diminish his bad decision

making.  Undersigned counsel understands that two co-defendants, Blanchard and

Patterson,  *See* PSR  ¶¶'s  have received sentences of 60 months.  A sentence of 60

months for Mr. Downs is therefore appropriate.

In the District of Columbia, the following cases illustrate the need to avoid

unwanted sentencing disparities:

*United States v. Douglas Payne*, Cr. No. 11-cr-317 (ABJ). In a case involving both the

possession of child pornography and traveling for the purpose of engaging in sex with a child

Judge Jackson imposed a sentence of 60 months' imprisonment on both counts (to run

concurrently), to be followed by ten years of supervised release. The Sentencing Guidelines in

Mr. Payne's case were 78-97 months' imprisonment.

*United States v. Morehead*, Cr. No. 11-cr-258 (RLW) (Jan. 17, 2012). In another case

that involved both the possession of child pornography and traveling for the purpose of

engaging in sex with a child, Judge Wilkins imposed a sentence of 84 months, with 120 months

of supervised release. The Guidelines range in Mr. Morehead's case was 121-151 months'

imprisonment.

*United States v. Moreira*, 10-cr-002 (ESH): In this possession case, the defendant used peer-to-peer software to share files with an undercover law enforcement agent. When the defendant was arrested, law enforcement found over 800 images and 5 videos of child pornography, including images of prepubescent children, in the defendant's possession. While Mr. Moreira's Guidelines range was 78 to 97 months, Judge Huvelle sentenced him to 60 months' probation with 60 days incarceration to be served on weekends.

*United States v. Branco,* 09-cr-095 (ESH): Guidelines range of 108-135 months, Judge Huvelle sentenced the defendant to 65 months' imprisonment, after meeting Detective Palchak in a chat room, sharing child pornography, having disgusting conversations, and repeatedly talking about getting together for sex with a minor. Mr. Branco's sentence was only five months above the mandatory minimum sentence in that case.

*United States v. McHaney*, 08-cr-008 (TFH): Guidelines range of 97 to 120 months, Judge Hogan sentenced the defendant to 36 months' imprisonment. Though the charge in this case was possession of child pornography, the Statement of Facts accompanying his plea agreement indicates that the defendant also agreed to meet with a fictitious 13-year old boy for the purpose of having sex with him. When the defendant arrived at the meeting and was arrested, police found a flash drive in the defendant's possession that contained more than 600 images of child pornography, including images of children 3 to 5 years of age and young teens.

*United States v. Bryant,* 08-cr-170 (JR): Judge Robertson imposed a 40-month sentence in an 18 U.S.C. § 2423(b) and D.C. Code enticement case in which the defendant, using his computer, agreed to meet with a fictitious 13 year old girl for the purpose of engaging in sexual intercourse. When the defendant arrived at the meeting, the defendant had a video

camera and $1,000 cash. The Guidelines range for this defendant was 135 to 168 months' imprisonment.

*United States v. Malakoff*, Cr. No. 09-cr-0051 (ESH). In a case involving a charge for possession of child pornography, Judge Huvelle sentenced Mr. Malakoff, a 47-year old adult male, to five years' probation. The advisory Guidelines range was 78-97 months. As with the instant case, *Malakoff* involved both pornographic photos and videos. As stated by Judge Huvelle, "I've viewed some of these photos, not all by any means, a short selection. And they're totally repugnant, I don't know how else to describe them. . . . Having seen these pictures, I realize that these videos are profoundly disturbing." Tr. at 32, 35. And yet, based upon the other section 3553 factors, such as Mr. Malakoff's lack of any other criminal record, a childhood sexual trauma, the punishment already inflicted by the conviction and sex offender registration requirement, and Mr. Malakoff's deep roots in the community, the Court sentenced Mr. Malakoff to no prison time at all, but rather five years' probation.

Judge Huvelle expressly addressed the issue of varying so significantly from the Sentencing Guidelines range of 78-97 months. In addition to the factors noted above that were specific to Mr. Malakoff, the Court noted that:

> [A] review of the case law, including the only relevant cases that I found in this jurisdiction . . . indicates *that a significant percentage of cases involve substantial downward variances*. Of the five cases that my probation department was able to identify in this jurisdiction where there was no mandatory minimum that controlled the sentence, there were three significant downward variances in three of the five cases.

Tr. at 40 (emphasis added).

One reason Judge Huvelle and the other judges of this Court consistently vary significantly downward from the Guidelines is that the Guidelines for the child pornography

offenses "do not reflect the sentencing commission's exercise of its character[istic] institutional role. Therefore, they are not entitled to the usual deference." Tr. at 41. Quoting in part from Judge Roberts' bench ruling in *United States v. Matheron*, Crim No. 08-066 (RWR), Judge Huvelle stated in *Malakoff*:

> The base offense level was not derived from the sentencing commission's recommendation based upon its singular expertise and study of real sentencing date and national experience, the way the commission determined most other base offense levels. Over time, the level here was substantially increased, not as a result of studies by the expert body Congress created, but was ultimately key[ed] to the increased statutory maximum sentence and the statutory mandatory minimum sentences for the trafficking offenses. Moreover, the enhancement for the volume of images was created by legislation, not crafted or recommended by the commission based upon its careful study in correlation to sentencing goals under 3553.[6]
>
> Nor does the guideline assure just punishment in individual cases. The enhancement for using a computer is a undifferentiated application that fails to distinguish the level of culpability for consuming images from that of child pornographers, or from offenders using the computer for commercial profit or mass distribution. The Supreme Court recently in 2009 in a case called [*Spears v. United States]* finally rejected the notion that policy disagreements with guideline cannot provide a basis for sentencing variances.

*Id.* at 41-42.

*United States v. Rowan*, 09-cr-225 (RMU): Guidelines range of 97 to 120 months, Judge Urbina sentenced the defendant to 24 months' imprisonment with 180 months of supervised release. Though the defendant was charged with possession only, the Statement of Facts accompanying his plea agreement indicates that the defendant distributed 16 images to an

---

[6]     The legislative background on the enhancement based on the quantity of images, which was contained in the PROTECT Act, is particularly informative. As discussed in *Stabenow*, discussed *infra*, "two government attorneys convinced a novice Congressman to insert [these] dramatic changes to the child pornography Guidelines into an unrelated, popular bill, *without notice* to the Sentencing Commission. *Id.* at p. 19. Senator Diane Feinstein compared the changes to writ[ing] the criminal code on the back of an envelope. *Id.* at 22.

undercover officer through peer-to-peer computer software. Upon investigation, 826 images of child pornography were found in the defendant's possession, including images of infants and toddlers.

*United States v. Wright*, 09-cr-311 (ESH): Guidelines range of 33 to 41 months, Judge Huvelle sentenced the defendant to 60 months' probation. The defendant in this case used peer-to-peer software to download pornographic images. About 284 images of child pornography were found in the defendant's possession.

*United States v. Matheron*, 08-cr-66 (RWR): Guidelines range of 46 to 57 months, Judge Roberts sentenced the defendant to 12 months and 1 day of imprisonment. The 58-year old defendant was found in possession of between 300 and 600 images of child pornography.

*United States v. DiFazio*, 07-cr-022 (RJL): Guidelines range of 63 to 78 months, Judge Leon sentenced the defendant to 12 months' imprisonment. Law enforcement recovered 458 images of child pornography.

*United States v. DeGrange,* 13-cr-297 (BAH): Guidelines range of  87 to 108 months, Judge Howell sentenced the defendant to 57 months.   Law enforcement recovered 200 images of child pornography.

*See also United States v. Clary*, 12-019 (RLW) (24 months)*; United States v. Samuel Rankin*, 11-366 (JDB) (32 months)*; United States v. Welch*, 11-153 (JEB) (27 months); *United States v. Legg*, 11-131 (CKK) (30 months); *United States v. Copeland*, 11-092 (JDB) (24 months); *United States v. Nelson*, 11-059 (RWR (25 months); *United States v. Stankavage*, 11-045 (CKK) (24 months); *United States v. Johnson*, 10-228 (RBW) (sentenced to 12 months after pleading to D.C. Code offense); *United States v. Unachukwu*, 06-358 (GK) (24 months); and *United States v. Bartolain*, 06-236 (GK) (18 months).

17

**The Sentencing Commission's Report to Congress and The *Stabenow* Report.**

In February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines. *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"]. The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id.* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii, 323.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi; *id.* at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6. Because

"sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

In describing the varying degrees of culpability, the Commission reported that the "typical" child pornography case now involves images depicting "prepubescent children engaging in sexually explicit conduct." *Id.* at 84. Some offenders "acquire enormous and often well-organized collections," sometimes up to hundreds of thousands of images; some "intentionally collect child pornography depicting the sexual torture of children, including infants and toddlers," *id.* at viii, 84-92; and some have collected material over "a series of decades" beginning in the pre-Internet era, *id.* at 80. The variety of images readily available on the Internet and found in offenders' possession ranges from "legal but sexually suggestive poses" to extremely graphic images "depicting violence, humiliation, bondage, and bestiality." *Id.* at 80-81, 90-91. Some offenders "are very discriminating" and limit their collection. *Id.* at 81. Offenders "vary widely in their

19

technological sophistication," with some relatively unsophisticated offenders using widely available peer-to-peer to receive or distribute material "in an indiscriminate manner," while others "use their technological expertise to create private and secure trading 'communities' and to evade, and help others evade, detection by law enforcement." *Id.* at viii, 61-62.

The Commission reported that approximately one quarter of federal offenders "received child pornography from commercial websites, thereby fostering the commercial markets," and one quarter engaged in "personal distribution" to another individual through bartering or trading of images, also described as a "market." *Id.* at 98-99. There is, however, no social science research available to support the theory that criminal punishments "have affected commercial or non-commercial 'markets' in child pornography since the advent of the Internet and P2P file sharing." *Id.* at 98.

The Commission reported that some offenders have "non-sexual motivations for viewing child pornography," including "avoidance of stress or dissatisfaction with life." *Id.* at 79. It reported that recent studies show that "appropriate 'treatment interventions . . . are associated with lower rates of recidivism—some of them very significant,'" *id.* at 278 & n.31 (quoting Center of Sex Offender Management, *The Comprehensive Approach to Sex Offender Management* 5 (2008)), and that "[p]olygraph testing of sex offenders is widely accepted by experts as a critically important corollary of effective treatment." *Id.* at 282.

The Commission reported that "not all child pornography offenders are pedophiles or engage in other sex offending." *Id.* at 104. Approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior,"

criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. *Id.* at ix-x, 204-05. However, "the current guideline measures for offender culpability (e.g., for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." *Id.* at 204.

The Commission concluded that "[t]he current sentencing scheme in § 2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." *Id.* at xx; *see also id.* at 321. The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." *Id.* at xviii, 322.

The Commission recommends that the specific offense characteristics related to the types and volume of images, distribution, and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies." *Id.* at xviii-xix, 322-23.

The current guideline at issue in this case, U.S.S.G. § 2G2.2, is the perfect example of a

non-empirically based guideline. The guideline does not represent the Sentencing Commission's exercise of its characteristic institutional role and therefore deserves minimal deference. *See, e.g., United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008); *United States v. Baird*, 580 F. Supp. 2d 889, 895 (D. Neb. 2008) ("[B]ecause [2G2.2] does not reflect the Commission's unique institutional strengths, the court affords them less deference than it would to empirically grounded guidelines.").

The Sentencing Commission itself has acknowledged that U.S.S.G. § 2G2.2 is not the product of "empirical data and national experience" but instead a response to the creation of mandatory minimum sentences and specific congressional directives. *United States Sentencing Commission, Fifteen Years of Guideline Sentencing*, at 73 (Nov. 2004) ("frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress"); *United States v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wisc. 2008); *Baird*, 580 F. Supp. 2d at 892 ("when Guidelines are not the result of 'the Commission's exercise of its characteristic institutional role,' such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with an 'ordinary case,' in which 'the Commission's recommendation of a sentencing range will reflect a rough approximation of the sentences that might achieve §3553(a)'s objectives'"); *United States v. Johnson,* 588 F. Supp. 2d 997, 1004 (S.D. Iowa) ("because [U.S.S.G. 2G2.2 does not] reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, the Court . . . affords them less deference that it would to empirically-grounded guidelines").

22

As noted above, district court judges have described U.S.S.G. § 2G2.2 as "seriously" flawed not only because § 2G2.2 was promulgated in a manner inconsistent with the approved practices of the Sentencing Commission, but also because U.S.S.G § 2G2.2 does not adequately reflect important distinctions in levels of culpability among defendants convicted of shipping or transporting images containing child pornography. As discussed by AFPD Troy Stabenow in *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, available at http://sentencing.typepad.com (January 1, 2009) (hereinafter "*Stabenow*"), using the "empirical approach" the Sentencing Commission initially created a Base of Offense Level of 13 for U.S.S.G. § 2G2.2. The Commission explained:

> It is important for Congress to recognize that the Commission is now in a position to provide, to an extent unparalleled by previous sources, detailed data on actual sentencing practices under the guidelines-information that we hope Congress will consider in its decision on sentencing policy

*Stabenow* at p. 5.

Today, the corresponding Base Offense Level for the distribution of child pornography is 22, nine levels higher. This dramatic increase was not the result of the "empirical approach" used by the Sentencing Commission in determining the original Base Offense Level at 13, but instead "the result of arbitrary increases by Congress slipped into other bills, often with little or no debate." *Hanson*, 561 F. Supp. 2d at 1010.

Unwarranted increases have not been limited to the Base Offense Level of U.S.S.G. § 2G2.2. Unwarranted increases have also occurred in the context of Specific Offense Characteristics. As Judge Adelman notes, many of the Specific Offense Characteristics in U.S.S.G. § 2G2.2, such as the enhancement for "number of images" (which adds up to 5 levels

23

to the Offense Level), were enacted without any "research, study or rationale." 561 F. Supp. 2d at 1010.

While many subsections of U.S.S.G. § 2G2.2 were promulgated with little or no empirical analysis, other subsections continue to be applied notwithstanding the fact that they do not address the concerns sought to be addressed by U.S.S.G. § 2G2.2. For example, the two level Specific Offense Characteristic enhancement for the "use of a computer," 2G2.2(b)(6),was designed to 1) fight the wide dissemination and instantaneous transmission in computer-assisted trafficking of child pornography, 2) combat the increased difficulty of investigation and prosecution by law enforcement officials, 3) minimize the increased likelihood that child pornography will be viewed by and harm children, and 4) limit the potential for pedophiles to lure children into sexual relations through the computer. *Stabenow* at p. 14. Yet, the enhancement is applied in almost every single case. That is not what Congress intended. See id. at p. 16 ("if a client today used a computer, but did not widely disseminate the images, did not use them to entice or coerce a child, and did not show them to a child, then their conduct is completely outside the scope of the fear that prompted Congress to require the enhancement").

U.S.S.G. § 2G2.2 has also been repeatedly criticized because of its numerous other (and significant) Specific Offense Characteristics that are rarely case-specific or unique, but instead present in almost every single case: 2G2.2(b)(2): images containing children under twelve – 2 level increase; 2G2.2(b)(7): multiple images – up to a 5 level increase; and 2G2.2(b)(4): material that portrays sadistic or masochistic conduct – 4 levels. *See Grober*, 595 F. Supp. 2d at 397 (using the offense characteristics "to enhance the base offense level [of § 2G2.2] is irrational because logically and factually, the characteristics are simply not genuine aggravating factors. Rather, they are inherent in just about any downloading offense").

24

The sentencing scheme under USSG § 2G2.2 therefore not only destroys the distinction between "true peddlers of child pornography and more simple possessors or transporters," Hanson, 561 F. Supp. 2d at 1009, it also fails "to adequately reflect those important distinctions in levels of culpability" among defendants sentenced pursuant to 18 U.S.C. §2252A. *United States v. Baird*, 580 F. Supp. 2d 889, 895 (D. Neb. 2008).

Because USSG § 2G2.2 does not reflect the Sentencing Commission's unique role of relying on evidence and study to develop sound sentencing practices, and produces advisory sentencing ranges that are far greater than necessary to serve the statutory purposes of federal sentencing, courts throughout the country—and in this District—accord USSG § 2G2.2 minimal deference at best. Mr. Downs urges this Court to adopt the same approach in sentencing him.

## **CONCLUSION**

Given his age, lack of  criminal history,  strong family support, work history and commitment to do better, plus all other applicable factors the Court will consider, Mr. Downs respectfully moves this court to impose a sentence of 60 months  which is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a).   There is little possibility of him repeating this offense or posing a threat to public safety in any way.   It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr, Downs as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

Respectfully submitted,

KIRA ANNE WEST

By: _____ /s/
Kira Anne West
DC Bar No. 993523
1325 G Street N.W., Suite 500
Washington, D.C.  20005
Phone:  202-236-2042
kiraannewest@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 25th  day of February, 2020, a copy of same was delivered to the parties of record, by hand delivery filing, pursuant to the rules of the Clerk of Court for under seal filings. A copy was also emailed to the AUSA's and given to Mr. Downs.

_____ /S/
Kira Anne West